UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Wilbert Glover,

              Petitioner,              Court File No. 19-cv-1238 (DSD/LIB)

    v.

Warden Kathy Halvorson, and Keith Ellison,     **REPORT AND RECOMMENDATION**
Attorney General

             Respondents.

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and upon Petitioner Wilbert Glover's Petition for Writ of Habeas Corpus, [Docket No. 1], and Respondent Keith Ellison's Motion to Dismiss, [Docket No. 5].

For reasons discussed herein, the Court recommends that Respondent's Motion to Dismiss, [Docket No. 5], be **GRANTED**, and that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that this action be **DISMISSED with prejudice.**

**I.     BACKGROUND AND UNDERLYING STATE COURT PROCEEDINGS**

On May 9, 2019, Petitioner, a Minnesota state correctional facility inmate, filed with this Court a Petition Under 28 U.SC. § 2254 for Writ of Habeas Corpus by a person in state custody challenging the constitutionality of various aspects of his underlying court proceedings. (See, Pet. [Docket No. 1]).

The Minnesota Court of Appeals has related the following details about the events underlying Petitioner's criminal charges, as well as, his trial and convictions:

The charges of which Glover was convicted arose out of an investigation into a report of a sexual assault at his home. On November 24, 2015, Officer Finnegan of the St. Paul Police Department responded to a 911 call from a home in St. Paul. At a pre-trial hearing, he testified that, when he arrived, he found a young man, D.N.B., who was partially "shackled in chains" and crying. Officer Finnegan wrote in his application for a search warrant that D.N.B. had ligature marks around his neck, scabs on his wrists and ankles, and soiled clothing. D.N.B. told Officer Finnegan that he had been "abducted off the street" and "choked unconscious" and that when he awoke, "he was chained to a wall" in a basement and "spent several days there being sexually assaulted while chained to the wall." D.N.B. told Officer Finnegan that he had escaped by slipping out of a handcuff, breaking a ground-floor bathroom window with a fire extinguisher, and crawling out the bathroom window. D.N.B. also told Officer Finnegan that, before leaving the home, he removed the main fuse from the home's circuit box, thereby shutting off power to the home. D.N.B. told Officer Finnegan that he then crawled to a nearby house. D.N.B. told Officer Finnegan that the house from which he had escaped was within two blocks of the house from which the 911 call was made.

Officer Buchin also responded to the 911 call. At a pre-trial hearing, he testified that he helped look for the house from which D.N.B. had escaped. Officers looked for a house with a broken window on the first floor and no power. They soon found a house only two houses away with a torn window screen that was flapping in the wind. Upon investigation, the police saw that the window was in a bathroom. Upon checking the exterior electricity meter, officers noticed that electricity was not flowing to the house.

To determine whether the house was occupied, Officer Buchin checked the mailbox and found mail addressed to three persons, including Glover. Officers talked to neighbors to get more information about the person or persons residing at the house. While doing so, Officer Buchin saw a gray Cadillac approach, pause, and then park. Officer Buchin determined that the vehicle was registered to Glover. Officer Buchin identified the driver as Glover and arrested him.

The next day, November 25, 2015, Officer Finnegan and another officer signed an application for a warrant to search for evidence related to the reported sexual assault in Glover's home and in two vehicles registered to him. After a district court judge approved the application and issued the warrant, Officer Himes searched Glover's home and found two boxes of ammunition in the living room. Officers discovered that the warrant application had identified one of Glover's vehicles with an incorrect VIN number. On December 1, 2015, Officer Cottingham prepared a second application for a warrant to search that vehicle, identifying it with the correct VIN number. The second application stated that, in searching Glover's home, an officer had found ammunition and a holster for a firearm, and it further stated that Glover had a prior conviction that makes him ineligible to possess a firearm. After a district court judge approved the second application and issued the second warrant, Officer Himes searched Glover's vehicle and found a loaded handgun in the trunk.

The state initially charged Glover with kidnapping, in violation of Minn. Stat. § 609.25, subd. 1(2) (2014), and first-degree criminal sexual conduct, in

2

violation of Minn. Stat. § 609.342, subd. 1(e)(i) (2014). In January 2016, the state amended the complaint by adding charges of possession of a firearm by an ineligible person, in violation of Minn. Stat. § 624.713, subd. 1(2) (Supp. 2015), and possession of ammunition by an ineligible person, in violation of Minn. Stat. § 624.713, subd. 1(2).

At a pre-trial hearing, Glover waived his right to counsel and elected to represent himself. The district court appointed advisory counsel. *See* Minn. R. Crim P. 5.04, subd. 2. Before trial, Glover moved to suppress the evidence of the firearm and the ammunition on the ground that the search warrants were not supported by probable cause. At a pre-trial hearing, the state called four witnesses: Officer Finnegan, Officer Buchin, Officer Cottingham, and Officer Himes. Glover did not call any witnesses. The district court denied Glover's motions.

Before trial, the state voluntarily dismissed the kidnapping and the criminal-sexual-conduct charges. The two possession charges were tried to a jury on two days in July 2016. The state called four witnesses. Officer Buchin and Officer Himes testified about their investigation and the searches of Glover's home and vehicle. A forensic scientist with the state bureau of criminal apprehension testified that he conducted DNA testing on the firearm and the two boxes of ammunition but could not link the items to Glover or exclude Glover as a possible match to genetic material found on the items. Glover's landlord testified that Glover had lived at the home where the ammunition was found since October 2014. Glover did not introduce any evidence.

The jury found Glover guilty of both possession charges. The district court sentenced Glover to 60 months of imprisonment.

State v. Glover, No. A17-0483, 2018 WL 2293266, at *1–2 (Minn. Ct. App. May 21, 2018).

On May 21, 2018, Petitioner appealed his Conviction to the Minnesota Court of Appeals. Id. Petitioner was represented by counsel throughout the appeal, and Petitioner's appellate counsel argued that the Minnesota state district court "erred by denying [Petitioner's] motion to suppress the evidence of the firearm and the ammunition." Id. at *2. Specifically, Petitioner—though his appellate counsel—argued "that the first search warrant, which authorized the search of his home, was invalid on the ground that it was not supported by probable cause," and "that the second search warrant, which authorized the search of his vehicle, was invalid on the ground that it was based on the results of the search authorized by the first warrant." Id. In addition to the brief filed by appellate counsel with the Minnesota Court of Appeals, Petitioner filed a pro se

3

supplemental brief, arguing that his conviction should be reversed because: (1) "his neighbors were unable to accurately identify him during the investigation;" (2) "he was denied his constitutional right to effective assistance of counsel;" and (3) "the evidence [wa]s insufficient to support his conviction because the state's evidence [wa]s inconsistent and inaccurate" (together, the "Pro Se Claims"). Id. at *4.

In affirming the state district court's decision, the Minnesota Court of Appeals found that "the district court did not err by denying [Petitioner's] motion to suppress the evidence of the firearm and ammunition." Id. "[T]he neighbors' attempts to identify [Petitioner] during the investigation [we]re inconsequential" because "none of his neighbor's testified at trial," and Petitioner's "identity and connection to the contraband was established at trial by the testimony of his landlord and the officers who saw him drive the car in which the handgun was found." Id. Petitioner "was not denied his constitutional right to the effective assistance of counsel." Id. And "[T]he evidence [wa]s sufficient to support the jury's findings of guilt," and "[t]hus the evidence [wa]s sufficient to support [Petitioner's] convictions of possession of a firearm by an ineligible person and possession of ammunition by an ineligible person." Id.

On June 8, 2018, Petitioner requested review of the appellate court decision by the Minnesota Supreme Court. (Ex. 4 [Docket No. 14-1], at 42–49). Petitioner, through his appellate counsel, argued that the first and second search warrants were not supported by probable cause in violation of the federal and state constitutions. (Id. 47–49). "Petitioner also request[ed] that review be granted of the issues raised in his pro se supplemental brief filed in the court of appeals. These are important issues that warrant [the Minnesota Supreme Court's] consideration." (Id. at 49).

On August 7, 2018, the Minnesota Supreme Court denied Petitioner's request for further review. State v. Glover, A17-0483, 2018 Minn. LEXIS 456 (Minn. Aug. 7, 2018).

## II.   GLOVER'S PETITION FOR WRIT OF HABEAS CORPUS. [Docket No. 1].

On May 9, 2019, Petitioner filed in this Court a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (Pet. [Docket No. 1]). Petitioner named as Respondents Warden Kathy Halvorson, and Attorney General Keith Ellison. (Id.). Petitioner asserts four grounds for granting the writ: (1) there was no "probable cause to support the issuance of the warrants for the search;" (2) missing video evidence shows that he was not positively identified by any of his neighbors; (3) the evidence was insufficient to support his conviction; and (4) ineffective assistance of counsel. (Id.).

On May 24, 2019, Respondent Keith Ellison filed a Motion to Dismiss. [Docket No. 5]. On June 3, 2019, the Court issued an Order directing Respondents to file a Response to the Petition. [Docket No. 12]. Respondent Kathy Halvorson filed her Response on July 3, 2019, arguing that Petitioner's Fourth Amendment claim of invalid search warrants "is not reviewable in this proceeding," and Petitioner's other claims have been procedurally defaulted and, in the alternative, that they fail on their merits. (Id. at 9–16). On July 24, 2019, Petitioner filed his Reply to the Response, [Docket No. 16], after which the undersigned took the matter under advisement.

## III.   Standard of Review

As a threshold matter, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for all § 2254 habeas actions. 28 U.S.C. 2244(d)(1). The one-year period begins on the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

5

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

If a habeas petition is timely filed, then "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA establishes that federal courts are to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782–83 (8th Cir. 2007). Moreover, a federal court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [U.S. Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. See, Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" refers to the holdings, but not the dicta, of United States Supreme Court

6

opinions released prior to the date on which the state court issued its decision. See, Bobadilla v. Carlson, 570 F. Supp. 2d 1098, 1102–03 (D. Minn. 2008), aff'd, 575 F.3d 785 (8th Cir. 2009). An "unreasonable application" of federal law occurs when the state court identifies the correct governing legal rule but then applies it unreasonably to the petitioner's case. See, Williams, 529 U.S. at 408–09. A federal court "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Federal district courts may not conduct de novo review of a prisoner's constitutional claims. See, Yarborough v. Alvarado, 541 U.S. 652, 665 (2004). Rather, the AEDPA imposes a highly deferential standard which demands that the state court decisions be given the benefit of the doubt. See, Renico v. Lett, 559 U.S. 766, 773 (2010). When reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and

federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal law errors raised by state prisoners. O'Sullivan, 526 U.S. at 844; Duncan v. Henry, 513 U.S. 364, 365–66 (1995) (per curiam); Lundy, 455 U.S. at 518–19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

**IV.   ANALYSIS**

As a threshold matter, the Court finds that the Petition was filed within the 1-year statute of limitations established by the AEDPA. The Minnesota Supreme Court denied Johnson's petition for review on August 7, 2018. State v. Glover, A17-0483, 2018 Minn. LEXIS 456 (Minn. Aug. 7, 2018). Johnson filed the present Petition for Writ of Habeas Corpus on May 9, 2019, well within the one-year limitations period under the AEDPA. (See, Pet. [Docket No. 1]).

**A.  Respondent Keith Ellison's Motion to Dismiss**

Respondent Keith Ellison moves to be dismissed from these proceedings because he does not have custody over Petitioner, and therefore, he is not a proper respondent to these proceedings. (See, Motion to Dismiss [Docket No. 5]; Mem. in Supp. [Docket No. 6]). Ellison is correct. See, e.g., Rumsfeld v. Padilla, 542 U.S. 426, 450 n.18 (2004); Bridges v. Chambers, 425 F.3d 1048, 1049 (7th Cir. 2005). Should this Court's recommendation of dismissal for failure to exhaust state remedies be adopted, Ellison's motion is largely moot. In any event, however, Ellison's motion may be granted. See, e.g., Rumsfeld, 542 U.S. at 450 n.18; Bridges, 425 F.3d at 1049. Accordingly, the Court recommends that Respondent Keith Ellison's Motion to Dismiss, [Docket No. 5], be **GRANTED**.

**B.  Procedurally Defaulted Claims**

Respondent Kathy Halverson argues that Petitioner's positive identification, insufficient evidence, and ineffective assistance of counsel claims asserted as Grounds Two, Three, and Four

8

in the present Petition were not exhausted in the Minnesota state courts and, because they may not now be brought before the Minnesota state courts, are procedurally defaulted. Therefore, this Court should not consider the Petition on its merits. (Resp., [Docket No. 13], 10–16). In his Reply, Petitioner does not address this argument. (See, Reply, [Docket No. 16]). Petitioner does not argue that he exhausted all available remedies in Minnesota state court. (See, Id.). Nor does he argue that even if the claims are procedurally defaulted, this Court should nevertheless address them. (See, Id.).

> A state prisoner must first exhaust state court remedies before seeking federal habeas relief. This gives the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.
> To exhaust available state remedies, the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Fair presentment requires that prisoner to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue. . . . Further, a federal claim has not been fairly presented to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

Foster v. Fabian, No. 7-cv-4317 (JRT/JJG), 2009 WL 921063, *3 (D. Minn. March 31, 2009) (citations and quotations omitted); see also, Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) ("In order to present a habeas claim to the state court, a prisoner must 'fairly present' not only the facts but also the substance of his federal habeas corpus claim.").

9

Here, Grounds Two, Three, and Four of the present Petition mirror the Pro Se Claims raised to the Minnesota Court of Appeals. (See, Pet. [Docket No. 1], 7–10; Ex. 2 [Docket No. 14-1]); see also, Glover, 2018 WL 2293266, at *4. The Minnesota Court of appeals considered Petitioner's Pro Se Claims and rejected them on their merits. See, Glover, 2018 WL 2293266, at *4.

In his petition for review of the appellate court decision by the Minnesota Supreme Court, Petitioner "request[ed] that review be granted of the issues raised in his pro se supplemental brief filed in the court of appeals," and stated "[t]hese are important issues that warrant [the Minnesota Supreme Court's] consideration." (Ex. 4 [Docket No. 14-1], at 49). However, despite generally referring to the Pro Se Claims and asking for review of the appellate court decision thereon, the petition for review considered by the Minnesota Supreme Court did not identify the substance of the Pro Se Claims. (See, Id.). Nor did the petition for review reference any federal basis for the Pro Se Claims. (See, Id. at 42–49).

The general reference in the petition for review by Minnesota Supreme Court to the pro se supplemental brief filed with the Minnesota Court of Appeals was not sufficient on its face to identify the Pro Se Claims or any federal basis for them. See, Baldwin, 541 U.S. at 32; Abdullah, 75 F.3d at 411; Foster, 2009 WL 921063, at *3. Therefore, Petitioner did not "fairly present" his Pro Se Claims to all available Minnesota state courts, and as a result, he did not adequately exhaust the available Minnesota state-court remedies prior to bringing the present federal Habeas Petition.

> If a petition contains claims that have not been fairly presented, the court must then determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if it has not been fairly presented in one complete round of the state's established appellate review process, but the petitioner has the right, under state law, to raise the claim by any available procedure. A constitutional claim is procedurally defaulted if the state prisoner fails to exhaust his state court

10

> remedies with respect to that claim and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim.

Foster, 2009 WL 921063, at *3 (citations omitted).

Petitioner did not, but more importantly can no longer, fairly present his Pro Se Claims to the Minnesota Supreme Court. In State v. Knaffla, the Minnesota Supreme Court held that when an issue is or could have been litigated on direct appeal, it may not be brought in a subsequent, collateral appeal.[1] 243 N.W.2d 737 (Minn. 1976). Here, Petitioner's Pro Se Claims were litigated in his direct appeal before the Minnesota Court of Appeals and could have been fairly presented in his petition for review by the Minnesota Supreme Court. See, Glover, 2018 WL 2293266. Therefore, they may not again be raised in any subsequent state appeal. See, Knaffla, 243 N.W.2d at 741. Accordingly, Petitioner's claims are procedurally defaulted. See, Id.

> If a claim is procedurally defaulted on federal habeas review, a federal court may hear the petition only under two limited circumstances: (1) if the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged violation of federal law; or (2) if the court's failure to consider the claim will result in a fundamental miscarriage of justice.

Kindred v. Titus, No. 17-cv-620 (SRN/HB), 2017 WL 6987990, at *3 (D. Minn. Dec. 27, 2017) (citing McCall v. Benson, 114 F.3d 754, 758 (9th Cir. 1997)), see, also, Coleman v. Thompson, 501 U.S. 722, 750 (1991) (setting forth circumstances under which federal habeas review of procedurally defaulted claims is available).

> To establish cause for the default, a petitioner generally must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. To establish prejudice, the petitioner must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. A court need not consider prejudice unless the petitioner demonstrates cause.

---

[1] "There are two exceptions to the *Knaffla* rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review." Schleicher v. State, 718 N.W.2d 440, 447 (Minn. 2006) (quotations omitted). Neither exception is applicable in this case.

11

Kindred, 2017 WL 6987990, at *3 (citations and quotations omitted); accord, Coleman, 501 U.S. at 753. To establish a fundamental miscarriage of justice, a petitioner must "show, based on new evidence, that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995); accord, Kindred, 2017 WL 6987990, at *3 (citing McCall, 114 F.3d at 758). "If neither exception applies, the procedural default cannot be excused, and the court should deny the petition without reaching the merits of the claims." Kindred, 2017 WL 6987990, at *3.

Here, Petitioner has not articulated the cause for his procedural default. (See, Pet. [Docket No. 1]; Reply [Docket No. 16]). Since Petitioner has not satisfied the cause component required to overcome his claim's procedural default, it is unnecessary to address the prejudice component. Coleman, 501 U.S. at 753; Kindred, 2017 WL 6987990, at *3. Likewise, Petitioner cannot meet the "fundamental miscarriage of justice" exception because he failed to present any "reliable new evidence" providing clear and convincing proof that he is actually innocent. Brownlow, 66 F.3d at 999; Kindred, 2017 WL 6987990, at *3. As such, Petitioner's procedural default of Grounds Two, Three, and Four cannot be overcome and this Court remains unable to adjudicate his claims.

Therefore, the Court recommends that Grounds Two, Three, and Four as asserted in the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and be **dismissed with prejudice**.[2]

### C. Invalid Search Warrants

Petitioner asserts that the search warrants were not supported by probable cause as Ground One in his Petition for Writ of Habeas Corpus. (Pet. [Docket No. 1], at 5). The record

---

[2] See, Bush v. Smith, No. 17-cv-3129 (WMW/SER), 2018 WL 542693, *1-2 (D. Minn. Jan. 24, 2018) (dismissing with prejudice habeas claims which were procedurally defaulted).

shows Petitioner exhausted all available state remedies by fairly presenting his Ground One claim to the Minnesota Supreme Court in his petition for review. (See, Ex. 4 [Docket No. 14-1], at 42–49). Moreover, this is not a mixed petition because Grounds Two, Three, and Four are procedurally defaulted. See, Caldwell v. Miles, No. 17-cv-1971 (SRN/TNL); 2018 WL 7203983, at *7 (D. Minn. Apr. 9, 2018) ("The presence of a *procedurally defaulted* claim, however, does *not* create a mixed petition . . . ." (emphasis in original) (quoting Maxwell v. Gau, No. 12-cv-1770 (ADM/TNL); 2014 WL 1371912, at *9 n.3 (D. Minn. Apt. 8, 2014)). Therefore, the Court will consider Ground One of the present Petition on its merits.

Respondent Kathy Halverson argues that Ground One is barred from habeas relief under Stone v. Powell, 428 U.S. 465 (1976), because Ground One is a Fourth Amendment claim and Petitioner had an opportunity to fully and fairly litigate it in state court. (Resp. [Docket No. 13], at 9–10). In his Reply, Petitioner does not address this argument. (See, Reply, [Docket No. 16]).

In Stone, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 482. "[A] Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994), cert. denied, 514 U.S. 1052 (1995); see also, Poole v. Wood, 45 F.3d 246, 249 (8th Cir. 1995), cert. denied, 515 U.S. 1134 (1995). "[A] 'mere disagreement with the outcome of a state court ruling is not the equivalent of an

13

unconscionable breakdown in the state's corrective process.'" Chavez v. Weber, 497 F.3d 796, 802 (8th Cir. 2007) (quoting Capellan v. Riley, 975 F.2d 67, 72 (2d Cir.1992)).

The determination of whether there has been an "unconscionable breakdown" in a state's procedures does not require a review of the state courts' fact-finding process, or a review of the state courts' application of Fourth Amendment law. Willett, 37 F.3d at 1272. To the contrary, federal courts "are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation." Id. at 1273 (emphasis in the original). On federal habeas review, the "inquiry focuses on whether [the petitioner] received an opportunity for full and fair litigation of his claim, not on whether legal or factual error in fact occurred." Chavez, 497 F.3d at 802.

The Court finds that the rule of Stone v. Powell is clearly applicable here. Ground One of the present Petition is a Fourth Amendment claim. See, e.g., United States v. Shipton, No. 0:18-cr-202-PJS-KMM, 2019 WL 5330928, at *10 (D. Minn. Sept. 11, 2019), report and recommendation adopted by 2019 WL 5305573 (D. Minn. Oct. 21, 2019) ("The Fourth Amendment protects individual rights to be free from unreasonable searches and seizures and requires that search warrants be issued only on a showing of probable cause."); Glover, 2018 WL 2293266, at *2–4. In addition, the record shows that Petitioner had ample opportunities to present this Fourth Amendment claim in his state court proceedings.

Petitioner's Fourth Amendment claims were presented and addressed in the suppression motion that he filed in the trial court. Glover, 2018 WL 2293266, at *2. The Minnesota Court of Appeals also reviewed and rejected Petitioner's claims on the merits. Id. at *2–4. Thus, Petitioner not only had an opportunity to present his Fourth Amendment claims in the state courts, but those claims actually were raised, considered, discussed, and adjudicated on the

merits, in both the trial court, and in the Minnesota Court of Appeals. See, Id. Furthermore, Petitioner had yet another opportunity to present his Fourth Amendment claims in his petition for further review by the Minnesota Supreme Court. (See, Ex. 4 [Docket No. 14-1], at 42–49). Petitioner obviously disagrees with the outcome of the state court proceedings in which his Fourth Amendment claims were addressed, but he does not deny that those proceedings occurred, nor does he deny that they gave him an opportunity to litigate his current Fourth Amendment claims. (See, Pet. [Docket No. 1]; Reply [Docket No. 16]).

In Poole, the Eighth Circuit Court of Appeals found that Minnesota law provides ample opportunities for a Minnesota state criminal defendant to raise Fourth Amendment challenges. 45 F.3d at 249. That determination is controlling here. In this case, as in Poole, Petitioner may not "relitigate" his Fourth Amendment claims in a federal habeas proceeding. See, Id. Because Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim in the Minnesota state courts, federal habeas review of that claim is barred by Stone v. Powell. See, 428 U.S. at 482.

Therefore, the Court recommends that Ground One as asserted in the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and be **dismissed with prejudice**.[3]

---

[3] Washington v. Smith, No. 17-cv-5054 (DWF/SER), 2018 WL 3448598, at *4–6 (D. Minn. June 29, 2018), report and recommendation adopted by 2018 WL 3448354 (D. Minn. July 17, 2018) (dismissing with prejudice habeas claims which were barred by Stone v. Powell).

### V. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Respondent Keith Ellison's Motion to Dismiss, [Docket No. 5], be **GRANTED**;

2. The Petition for a Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

3. This action be **DISMISSED with prejudice.**

Dated: January 6, 2020                                        s/Leo I. Brisbois
                                                              Leo I. Brisbois
                                                              U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).